UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHN RAY GOWER,          )
                            )
       **Petitioner,**     )
                            )      **No. 16 C 6631**
    **v.**                         )
                            )      **Chief Judge Rubén Castillo**
UNITED STATES OF AMERICA,   )
                            )
       **Respondent.**     )

## MEMORANDUM OPINION AND ORDER

John Ray Gower ("Petitioner") filed a petition to vacate his sentence under 28 U.S.C.

§ 2255 based on the U.S. Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551

(2015). (R. 1, Pet.) For the reasons set forth below, the petition is denied.

## BACKGROUND

In October 2009, Petitioner and his co-defendant, Patrick Martin, were charged in a two-

count indictment with armed bank robbery in violation of 18 U.S.C. § 2113 (Count One) and

using a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c) (Count

Two). *United States v. Gower*, No. 09 CR 807-1, R. 14. In October 2010, Petitioner entered a

guilty plea to both counts of the indictment. *Id.*, R. 46. As part of the plea, Petitioner admitted

that on October 1, 2009, he participated in the robbery of First National Bank in South Holland,

Illinois, with Martin. *Id.* He admitted that prior to the robbery, he had purchased two firearms in

Oklahoma for use in the robbery, which he and Martin planned to commit in the Chicago area.

*Id.* He admitted to calling the bank shortly before the robbery and telling the bank manager to

place $200,000 in a garbage bag and explaining that another man (Martin) would come inside the

bank in a few minutes to collect the bag. *Id.* at 2. He threatened the manager that a bomb would

be detonated if employees did not cooperate with Martin when he entered the bank. *Id.* He also admitted serving as the getaway driver and leading the police on a high-speed chase, during which Martin discharged his weapon several times. *Id.* at 3. He further admitted that he had possessed a firearm "throughout the events that unfolded on October 1, 2009." *Id.* at 2. As part of the plea, Petitioner agreed to plead guilty to both counts of the indictment and to waive any issues for appeal other than those pertaining to his plea or the sentence imposed by the Court. *Id.* at 7. On January 6, 2011, the Court sentenced Petitioner to 72 months on Count One and 120 months on Count Two, to run consecutively. *Id.*, R. 69. Petitioner did not appeal.

On June 9, 2016, Petitioner filed the present petition. (R. 1, Pet.) He claims that his conviction under Section 924(c) must be vacated because the predicate offense for which he was convicted of possessing a firearm in furtherance of—bank robbery—does not constitute a "crime of violence" after *Johnson*.[1] (R. 1, Pet. at 4.) He alternatively claims that his trial counsel was ineffective "for failing to recognize his actual innocence" of the Section 924(c) charge because he did not actually "use" a firearm during the robbery. (R. 1, Pet. at 5.) The government filed a response arguing that Petitioner has not established an entitlement to relief under Section 2255. (R. 11, Resp.) Petitioner filed a reply in support of his petition. (R. 17, Reply.)

**LEGAL STANDARD**

A federal prisoner can move to vacate his sentence on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Relief under this statute is available only in

---

[1] In *Welch v. United States*, 136 S. Ct. 1257 (2016), the Supreme Court made the holding of *Johnson* retroactive to cases on collateral review. Defendants (like Petitioner) whose criminal cases were already final at the time *Johnson* was decided had one year from the date the *Johnson* opinion was issued—or until June 26, 2016—to seek relief under Section 2255. *See Holt v. United States*, 843 F.3d 720, 723 (7th Cir. 2016). This petition mailed on June 9, 2016, was filed narrowly before the deadline. (*See* R. 1, Pet. at 13.)

extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013).

## ANALYSIS

Before turning to the petition, the Court must address Petitioner's pending motion for appointment of counsel. (R. 9, Mot.) Petitioner has no constitutional right to counsel at this stage. *See Resendez v. Knight*, 653 F.3d 445, 446 (7th Cir. 2011) ("It is . . . well established that a criminal defendant enjoys [a] right to counsel through his first appeal . . . but that, once the direct appeal has been decided, the right to counsel no longer applies." (citation omitted)); *Jackson v. Cty. of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992) (observing that "indigent civil litigants have no constitutional or statutory right to be represented by counsel in federal court"). Nevertheless, the Court has discretion to appoint counsel for a person seeking relief under Section 2255 when "the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). The Court will abuse its discretion in denying a request for counsel only "if, given the difficulty of the case and the litigant's ability, [the petitioner] could not obtain justice without an attorney, he could not obtain a lawyer on his own, and he would have [ ] a reasonable chance of winning with a lawyer at his side." *Winsett v. Washington*, 130 F.3d 269, 281 (7th Cir. 1997) (citation and internal alterations omitted). Ordinarily, the litigant must make some effort to obtain counsel on his own, or demonstrate that he has been effectively precluded from doing so, before seeking the appointment of counsel by the Court. *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007).

Petitioner's motion is only one page long and asserts in general terms that he needs counsel because his case is "complex" and he has limited access to legal materials in prison.[2] (R. 9, Mot.) He makes no mention of whether he has made any effort to obtain counsel on his own or been hindered in his efforts to do so. As to his ability to litigate the case on his own, the record reflects that he completed high school and approximately two years of college. *Gower*, No. 09 CR 807-1, R. 56 at 29. His filings in this case reflect that he is fully literate and capable of making cogent arguments in support of his position. His Section 2255 petition and accompanying memorandum contain a nuanced claim premised on the Supreme Court's decision in *Johnson*, which itself demonstrates a familiarity with federal sentencing law. His filings are all neatly typed and contain citations to relevant statutes and case law. As is detailed below, Petitioner's *Johnson* claim is precluded by binding precedent from the U.S. Court of Appeals for the Seventh Circuit and his ineffective-assistance claim is significantly untimely. There is nothing before the Court to suggest that Petitioner would have a "reasonable chance of winning" if this Court were to appoint counsel to represent him in this case. *Winslett*, 130 F.3d at 281. Under these circumstances, Petitioner's request for counsel will be denied, and the Court turns to his petition.

---

[2] Petitioner argues in part that he needs counsel to prevent improper "Ex-Parte communication" between the government and the Court. (R. 9, Mot.) He more clearly articulates his concern in a separate document he filed in which he objects to the government's motion for an extension of time. (R. 10, Notice.) In that filing, Petitioner argued that the government's act of noticing the motion for a hearing before this Court was "highly unethical" given that he is in prison and cannot readily appear for a hearing. (*Id.*) But there was nothing improper about the government's actions; the government was simply following the ordinary procedure for having a motion heard. Additionally, no hearing was actually held by the Court. Instead, the Court granted the government's motion without a hearing, finding the request (for an extension of one day) reasonable and unlikely to result in any prejudice to Petitioner. (R. 14, Min. Entry.) The Court later granted Petitioner this same courtesy by extending the deadline for him to file a reply. (R. 16, Order.) In short, the Court finds no merit to this argument.

## I.    *Johnson* claim

In his first claim, Petitioner argues that his conviction on the Section 924(c) charge must be vacated in light of the Supreme Court's decision in *Johnson*. (R. 1, Pet. at 4.) He believes that after *Johnson*, federal bank robbery no longer qualifies as a "crime of violence" within the meaning of Section 924(c). (R. 3, Mem. at 1-5.)

*Johnson* involved a challenge to the Armed Career Criminal Act ("ACCA"), which provides enhanced sentences for defendants convicted of possessing a firearm after a felony conviction in violation of 18 U.S.C. § 922(g) who have "three previous convictions by any court . . . for a violent felony or a serious drug offense." 18 U.S.C. § 924(e)(1). A defendant who meets this definition is subject to a mandatory prison sentence of 15 years to life. *Id.* The ACCA defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that meets one of the following requirements: (1) it "has as an element the use, attempted use, or threatened use of physical force against the person of another"; (2) it is burglary, arson, extortion, or an offense involving the use of explosives; or (3) it "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). The first clause is commonly referred to as the "elements clause," the second as the "enumerated crimes clause," and the third as the "residual clause." In *Johnson*, the Supreme Court invalidated the residual clause of the ACCA as unduly vague but left intact the enumerated crimes clause and the elements clause. *See Johnson*, 135 S. Ct. at 2563 ("Today's decision does not call into question application of the [ACCA] to the four enumerated offenses, or the remainder of the Act's definition of a violent felony."); *Stanley v. United States*, 827 F.3d 562, 564 (7th Cir. 2016) ("*Johnson* holds that the residual clause is unconstitutionally vague. *Johnson* does not otherwise affect the operation of the Armed Career Criminal Act.").

Like the ACCA, Section 924(c) has an elements clause and a residual clause. The elements clause applies to offenses that have "as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). The residual clause covers offenses that "involve[] a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," 18 U.S.C. § 924(c)(3)(B). Given the similarities between the two residual clauses, the Seventh Circuit has held that the residual clause in Section 924(c)(3) is void for vagueness after *Johnson*. *United States v. Cardena*, 842 F.3d 959, 996 (7th Cir. 2016).

Petitioner argues that after *Johnson*, his Section 924(c) conviction is invalid because bank robbery no longer constitutes a "crime of violence" under the residual clause. (R. 3, Mem. at 2-5.) He is correct that in light of *Johnson*, the government cannot rely on the residual clause to prove that he committed a crime of violence. However, Petitioner's conviction remains valid if his bank robbery conviction constitutes a crime of violence under the elements clause, which *Johnson* left intact. *See Johnson*, 135 S. Ct. at 2563; *see also United States v. Wheeler*, 857 F.3d 742, 744 (7th Cir. 2017) ("Neither *Cardena* nor *Johnson* has anything to do with the elements clauses in § 924(c) and other statutes.").

As stated above, an offense constitutes a crime of violence under the elements clause of Section 924(c) if it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). "Physical force" in this context means "*violent* force—that is, force capable of causing physical pain or injury to another person." *Curtis Johnson v. United States*, 559 U.S. 133, 140-42 (2010) ("*Curtis Johnson*"). The federal bank robbery statute provides in relevant part:

(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, . . . Shall be fined under this title or imprisoned not more than twenty years, or both.
. . .

(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined under this title or imprisoned not more than twenty-five years, or both.

18 U.S.C. § 2113(a) & (d).

Petitioner was convicted under these two provisions based on his admission in the plea agreement that he knowingly possessed a firearm in furtherance of the bank robbery. *Gower*, No. 09 CR 807-1, R. 14 at 3-4. He nevertheless argues that his armed bank robbery conviction does not satisfy the elements clause of Section 924(c) because bank robbery can be committed "by 'intimidation,' which does not (1) require the use, attempted use, or threatened use of violent physical force or (2) an intentional threat of the same." (R. 3, Mem. at 2.) Unfortunately for Petitioner, the Seventh Circuit rejected that exact argument in *United States v. Armour*, 840 F.3d 904 (7th Cir. 2016). The defendant there (like Petitioner) argued that his federal bank robbery conviction did not constitute a crime of violence under the elements clause of Section 924(c)(3) because a person "can commit robbery by 'intimidation,' as distinct from 'by force or violence.'" *Id.* at 908. The Seventh Circuit disagreed, explaining as follows:

A defendant properly convicted of bank robbery is guilty per se of a crime of violence, because violence in the broad sense that includes a merely threatened use of force is an element of every bank robbery. The intimidation element is satisfied if an ordinary person would reasonably feel threatened under the circumstances. . . . [T]he defendant does not have to make an explicit threat or even announce that he is there to rob the bank. Credibly implying that a refusal to comply with a demand for money will be met with more forceful measures is enough.

> *Curtis Johnson* teaches that the violent force that must be feared for robbery by intimidation to be a crime of violence has a low threshold—a fear of a slap in the face is enough. This low threshold of violent force is necessarily satisfied in attempted bank robbery by intimidation. A bank employee can reasonably believe that a robber's demands for money to which he is not entitled will be met with violent force of the type satisfying *Curtis Johnson* because bank robbery . . . inherently contains a threat of violent physical force.

*Id.* at 909 (internal citations and quotation marks omitted).

The Seventh Circuit therefore held that federal bank robbery "satisfies the elements clause of the definition of 'crime of violence'" contained in Section 924(c)(3)(A). *Id.* at 908. The court recently reaffirmed this holding in another case, observing that it would have been a "futile endeavor" for a Section 2255 petitioner to argue that his federal bank robbery conviction did not constitute a crime of violence under the elements clause of Section 924(c). *Clark v. United States*, ---F. App'x---, 2017 WL 690754, at *2 (7th Cir. Feb. 21, 2017); *see also United States v. Newton*, No. 16 C 6335, 2017 WL 1545735, at *1 (N.D. Ill. Apr. 28, 2017) ("Newton's second argument is that federal bank robbery—the predicate offense forming the basis for his § 924(c)(1)(A)(iii) charge—is not a 'crime of violence' under the elements clause. This argument is foreclosed by *United States v. Armour*, 840 F.3d 904 (7th Cir. 2016)). These cases are determinative in Petitioner's case. Because federal bank robbery constitutes a crime of violence under the elements clause of Section 924(c), Petitioner's conviction is not impacted by *Johnson*. Therefore, Petitioner's first claim is denied.

## II.   Ineffective Assistance Claim

In his remaining claim, Petitioner asserts he is actually innocent of the Section 924(c) charge because he did not technically "use" a firearm during the robbery; he believes his trial attorney was ineffective for failing to fight the charge on this ground. (R. 1, Pet. at 4; R. 3, Mem.

at 6-9.) As the government argues, Petitioner's ineffective-assistance claim is untimely. (*See* R.

11, Resp. at 12.)

A petition filed under 28 U.S.C. § 2255 "is subject to a one-year time limitation." *Clay v.*

*United States*, 537 U.S. 522, 524 (2003). The limitations period begins to run on the latest of the

following dates:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). "[T]he timeliness of each claim asserted in . . . a section 2255 motion . . .

must be considered independently." *Davis v. United States*, 817 F.3d 319, 328 (7th Cir. 2016).

Thus, while Petitioner's *Johnson* claim was timely given that the case was not decided until

2015, the *Johnson* decision did not authorize Petitioner to make a "belated collateral attack" on

his conviction on grounds "unrelated to *Johnson*." *Stanley*, 827 F.3d at 566.

Petitioner's ineffective-assistance claim does not involve a newly recognized right made

retroactive to cases on collateral review. Nor does Petitioner claim that he has newly discovered

evidence or that some governmental impediment prevented him from asserting this claim earlier.

By process of elimination, Section 2255(f)(1) applies, and Petitioner had one year from the date

his conviction became final to seek relief in connection with this claim. This Court entered

judgment in Petitioner's case on January 10, 2011. *Gower*, No. 09 CR 807-1, R. 69. Petitioner

did not pursue a direct appeal. His conviction became final for purposes of Section 2255(f)(1) when the time expired for filing a notice of appeal, which was 14 days after entry of judgment. *See* FED. R. APP. P. 4(b)(1)(A); *see also Clarke v. United States*, 703 F.3d 1098, 1100 (7th Cir. 2013) (holding that when a petitioner does not pursue a direct appeal, the one-year limitations period under Section 2255(f)(1) begins to run when "the deadline for appeal expires"). Petitioner had one year from that date—or until late January 2012—to file a Section 2255 petition raising this claim. His petition filed in June 2016 was thus untimely by more than four years.

It appears that Petitioner may be attempting to assert actual innocence as a basis for this Court to review his belated ineffective-assistance claim on the merits.[3] (R. 3, Mem. at 7.) He is correct that "a credible showing of actual innocence" can be used to excuse a habeas petitioner's failure to comply with a deadline under AEDPA. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013); *see also Herrera v. Collins*, 506 U.S. 390, 404 (1993) (observing that a claim of actual innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits"). But the Supreme Court has emphasized that the actual innocence exception "applies to a severely confined category" of cases. *McQuiggin*, 133 S. Ct. at 1933. A petitioner claiming actual innocence must come forward with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). He must demonstrate that in light of this new

---

[3] To the extent Petitioner is trying to assert "actual innocence" as an independent ground for vacating his Section 924(c) conviction, such a claim is not cognizable in this proceeding. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) (recognizing that the Supreme Court has never determined whether a prisoner is entitled to habeas relief "based on a freestanding claim of actual innocence"); *Herrera v. Collins*, 506 U.S. 390, 400 (1993) (observing that "[c]laims of actual innocence . . . have never been held to state a ground for federal habeas relief absent an independent constitutional violation"); *see also United States v. Evans*, 224 F.3d 670, 674 (7th Cir. 2000) ("[A] conviction does not violate the Constitution (or become otherwise subject to collateral attack [under Section 2255]) just because newly discovered evidence implies that the defendant is innocent.").

10

evidence, "it is more likely than not that no reasonable juror would have convicted [him]." *Id.* at 327. This is a difficult standard to meet and thus "claims of actual innocence are rarely successful." *Id.* at 324.

Petitioner does not meet the high standard for proving actual innocence. He has not come forward with any new evidence, let alone reliable evidence, to establish that it is more likely than not that no reasonable juror would have convicted him on the Section 924(c) charge. Instead, he offers various explanations for his conduct, including that he was a "drug addict who needed money to help his family and himself." (R. 3, Mem. at 5.) The Court is sympathetic to Petitioner's problems, but they do not establish actual innocence. He also asserts that he "kept both hands on the wheel" of the getaway car and that "the weapon that the Movant's partner had available to him in the bank was in the back of the van." (*Id.* at 6.) To the extent Petitioner is trying to disclaim possession of a gun, this directly conflicts with his admission in the plea agreement that he had a gun in his possession during the entire course of the robbery. *Gower*, No. 09 CR 807-1, R. 46 at 3. The statements he made in connection with his plea are presumed to be truthful. *United States v. Moody*, 770 F.3d 577, 581-82 (7th Cir. 2014); *United States v. Messino*, 55 F.3d 1241, 1248 (7th Cir. 1995). He has provided no reason why the Court should discount his statements in this proceeding.

Even if Petitioner could somehow establish actual innocence, his underlying claim has no merit. Petitioner appears to believe that the Section 924(c) charge required the government to prove that he fired or otherwise "used" a gun during the commission of the robbery, but this reflects a misunderstanding of the law. Section 924(c) applies not just to defendants who actually *use* a firearm in the commission of violent crime, but also to those who *possess* a firearm in furtherance of such a crime. *See* 18 U.S.C. § 924(c)(1)(A) (applying enhanced sentence to "any

person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, *possesses* a firearm" (emphasis added)); *see also United States v. Perez*, 28 F.3d 673, 676 (7th Cir. 1994) ("[S]ection 924(c)(1) does not require that a defendant brandish or fire a gun. It is sufficient if the gun increases the likelihood of success of the [underlying] offense as a means of protection or intimidation, if the gun is available to provide protection, or if the gun provides a heightened sense of security to a defendant."). Indeed, under co-conspirator liability principles, once Petitioner knowingly agreed to participate in a robbery in which firearms were to be used, he was responsible for Martin's use of a firearm even if he himself did not possess one. *See United States v. Adams*, 789 F.3d 713, 714 (7th Cir. 2015) (defendant who acknowledged in his guilty plea that he "had agreed with five other persons to rob a purported stash house . . . and to use firearms in furtherance of the robbery" was accountable for firearms contained in toolbox found inside the getaway van "no matter who put the toolbox in the van and whether or not Adams knew what was in it"). Petitioner admitted in the plea agreement that he had purchased two guns in Oklahoma that he and Martin intended to use to commit a robbery. *Gower*, No. 09 CR 807-1, R. 46 at 2.

Thus, a challenge by Petitioner's trial counsel to the Section 924(c) charge on the ground that Petitioner did not personally "use" a gun during the robbery would have been frivolous. Because the argument had no merit, counsel cannot be considered ineffective for failing to raise it. *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel."). For these reasons, claim two is untimely and otherwise without merit. The petition is denied.

### III.    Certificate of Appealability

As a final matter, the Court must decide whether to grant Petitioner a certificate of appealability. *See* RULE 11 OF THE RULES GOVERNING SECTION 2255 CASES. To obtain a certificate of appealability, Petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). As outlined above, Petitioner's *Johnson* claim has no merit and his other claim is untimely. The Court finds no basis to conclude that reasonable jurists would debate the outcome of the petition or find a reason to encourage Petitioner to proceed further. Accordingly, the Court declines to grant him a certificate of appealability.

### CONCLUSION

For the foregoing reasons, Petitioner's motion for the appointment of counsel (R. 9) is DENIED. His petition under 28 U.S.C. § 2255 (R. 1) is DENIED, and the Court declines to issue him a certificate of appealability.

ENTERED:

**Chief Judge Rubén Castillo**
**United States District Court**

Dated: July 24, 2017